Good afternoon, Your Honors. May it please the Court, my name is Kathleen Brewer and I represent the plaintiff and appellant, Ali Bassiri in this case, against his former employer Xerox Corporation. The matter before the Court right now is a question of ERISA preemption and it is here on an interlocutory appeal under Section 12 and 92B. So the issue has been narrowed and certified by the District Court is whether the Department of Labor has reasonably interpreted its payroll practices regulation under which certain types of payroll practices are not considered ERISA plans. The regulation, which is CFR 2510.3-1B2, requires or exempts plans that pay out of employers' general assets and employees' normal compensation during periods of medically related absence. Such plans are not welfare benefit plans under ERISA because they provide wage compensation rather than benefit compensation. They're not regulated by ERISA and state laws pertaining to those types of plans are not preempted. Now in interpreting the regulation, the Department of Labor has focused more on the nature of the compensation and its similarity to wages rather than on the amount of wages. And this distinction is absolutely critical because two equally important Congressional policies and purposes are at work here and both must be given effect. First, Congress has determined that federal law will not preempt state laws pertaining to wage compensation. And this circuit in California Hospital Association v. Henning acknowledged and observed that Congress wishes to encourage rather than preempt state regulation of wage compensation. The other policy that is at issue here as well is Congress's intent that federal law, ERISA, preempts state laws regulating benefit compensation. When Congress enacted ERISA, it wished to regulate benefit compensation, which is usually financed by an accumulation of funds in some type of trust mechanism, that such funds are subject to mismanagement and abuse, which exposes employees to the risk of losing benefits for which they have worked, particularly retirement benefits. So it's that type of fund abuse and mismanagement that Congress sought to address when it enacted ERISA. Now the DOL is, or the Department of Labor, is responsible for administering both the wage statutes, the basic wage statutes, and ERISA. And the DOL understands the policies driving the wage benefit distinction and the distinction between funded and unfunded plans. Given these two congressional policies, the critical question when determining whether certain types of payments, such as the payments at issue in this case, are covered by ERISA is whether the payments are more closely analogous to wage compensation or benefit compensation. Now the Xerox plan... Let me ask you a question. Yes. In the real world, what difference does all this make to your client? Well, this makes all the difference in the world to us because... Well, I'm asking you this because you've given us a lot of information. Okay. We don't want to be under ERISA. And I think most employees and most insureds in this country would say the same thing when they find out what it's like to have your claim governed by ERISA. I can understand that, yeah. Okay. One fact that seems to me to be unclear is Xerox says that some of the benefits are paid out of trust rather than the general assets. And you say we don't know. But shouldn't we find out first? Well, that is an issue that Xerox did raise in the motion for a certification of the district court's order. So I think the procedural posture of the case does not allow that issue to be determined right now. It's a factual issue. Well, shouldn't we send it back and find out? Yes, I think so. There isn't some way that you two could stipulate to it, is there? Or is there? I think discovery needs to be taken on it. I do think discovery needs to be taken on that issue. Your voice is very nice and soft, but sometimes it fades away. I mean, it's not something that the lawyer for Xerox and you could reach an agreement on? Mr. Potler, maybe. I'm not sure. Do you know or don't you know? No, we haven't discussed that. But it's obviously not it. That's a fact that's ascertainable. You don't need discovery for that particularly, unless they're resistant to telling you what the source of funding is. But do you think that that is the critical fact? In other words, if it turns out that the payment is not from the general assets of the corporation, is that fatal to your claim? Yes, it would be. So shouldn't we find out? Or don't you want to know? I believe that it's very, very clear that they are made from the general assets of the company. And that when the benefits booklet is distributed, it tells the employees quite clearly in there, and it's in the record here, that the benefits are paid out of the general assets of the company. And there was no question. Well, maybe we should press the lawyer for Xerox when he has the chance to, what he thinks. Why don't you have a seat, and then we'll press him. I'd love to have a seat. You can reserve your time. Okay, thank you. I'd call that a miracle. Good afternoon. My name is Rick Potler. I'm from the law firm of Thompson-Coburn in St. Louis, Missouri, and I have the privilege today of representing the Applebee's defendants. So is it paid out of the general assets or not? I'll pass to the, no. Your Honor, there is a trust fund that has approximately $14 million out of which all benefits are paid to collectively bargained employees. The salaried employees are paid out of the general assets. It's one unified plan. And there are numerous courts that say that you can't have a plan that's part ERISA and part not ERISA. It's one unified plan. So, but your answer to this question is that his compensation was paid out of the general assets. Yes, absolutely. And then you leapt ahead to the second part of it, which was you don't think that matters. Correct. So we can stipulate today that, or you can stipulate, that it's paid out of the general assets. I can stipulate that his were paid out of the general assets, and I can stipulate further that there is a trust fund out of which all union collectively bargained employees are paid out of. Okay. What I'd like to do is... So why did you raise that point about some funds being paid out of a trust? Because it's conclusive to this case, as she acknowledged. Your Honor, there's one plan. I mean, to adopt your argument, if I understand it correctly, is you, because it's administered jointly, you think that it has to be either ERISA controlled or not? It's just not administered. It is one plan. Right. It's one plan. It's administered by one person, and some of the source of the funding differs depending on the type of employees. Right. She says it matters. You say it doesn't. Right. And there's a First Circuit case called McMahon v. Digital Equipment, which it says it has to be one plan. It either is ERISA or it is not ERISA, and I don't think you can divide it. The other part, and this is why we think this whole case is premature, as she will acknowledge also, there is 24 months paid by Xerox, and after that it's paid by Prudential. It's insured. It's all one plan. It just has different funding mechanisms, and I think the fact that it's insured by Prudential for the post-29 months is also an extremely important factor, which also compels that it be ERISA. What I'd like to do, if I can, though, I'd like to break my argument into two parts. First of all, I'd like to talk about the policy reasons why this is and should be an ERISA plan, and then I'd like to talk about the statute, the regulation, and the opinion letters. When you read the congressional history and the Supreme Court cases addressing ERISA, you find that this was a give-and-take in Congress and that the Supreme Court acknowledged on numerous occasions, including in the Merton's case, that it was a balancing test. I want to quickly talk about what I think are six important goals of ERISA, and the reason I do that is because Mr. Passiri keeps emphasizing one of those goals, and that is where it's funded, and saying that, well, ERISA was intended to address the funding issue. That's in part true, but it's not the whole story, and when you look at only one of those reasons, you miss all of the other reasons why ERISA was adopted and why it's important here. If we take all self-funded ERISA disability plans and hold that ERISA no longer applies to them, then we have and we do expose many of the employees to many of the risks that ERISA was intended to avoid, and I'd like to talk about that. I think, I mean, speaking for myself, I understand that we get a lot of ERISA cases, so we understand the statute, but it seems like the hardest problem for you is the Department of Labor has informally taken an opposite position. That is the difficult position for you. I realize that that is not a formal regulation. It's due less deference, but they've taken a position. Well, but the thing is the formal position of the Department of Labor is exactly in support of our position, because it says that if it is normal compensation. Ours is not normal compensation. The only way under the Department of Labor's regulation is that you fall outside of ERISA and into the payroll practice is, it says, if you pay normal compensation. Now, we pay 60% of normal compensation, so the only way that you can get there is to say that .6X equals X. And, Your Honors, when you look at those opinion letters by the Department of Labor, even they can't really do that. There's no analysis there. No, but they do say that. What they do is they change the regulation. Right. They say as long as it does not pay more than normal compensation. Well, what they've done then is modified and amended their own regulation, and in Christensen the Supreme Court made very clear that an agency can't modify or change its formally adopted regulation through the back door. Why do you think the Department of Labor adopted that regulation? Why do I think it adopted the regulation? I think when you look to the preamble of the regulation and also the pre-pre where they were inviting comments, it's very clear that there were some employees who have short-term disability plans where they pay 100% of the compensation to the people, and those people said, geez, we don't want to fall within ERISA because that means we have to file Form 5500s. We have to have formal plan documents. We have to file our summary plan descriptions with the Department of Labor. We have to distribute them. We have to have Section 503 administrative procedures. We don't want to do all that. If somebody's out with the flu or with an appendectomy for a week or two weeks, we want to pay them 100% of their compensation and not fall within all of ERISA's requirements, and the Department of Labor said, well, yeah, that makes sense. That's really not what we're intending to do here. If you go ahead and pay people their normal compensation for a period of time, then we're not going to make you comply with all of ERISA's requirements, and that's what the regulation says, and that's what the preamble says it's intended to do. In fact, the preamble says that very clearly, if your program is one that doesn't pay normal compensation but only pays a percentage of normal compensation, then you're going to be within ERISA, and I think because as a practical matter, Your Honor, what you will find is just like in the ERISA plan, in the Xerox plan, for five months we don't have an ERISA plan. We pay short-term disability. We pay you 100% of your normal compensation. We pay it as a part of your salary. But once you get beyond five months, then we pay you monthly instead of biweekly, and we pay you only 60% of your compensation, and we then do comply with all of ERISA's requirements. And so I think that's what the Department of Labor was getting at, and when I think you read the – You pay them monthly instead of biweekly? Yes. We don't – your paycheck – You pay them every other week. Whenever you are an employee, an active employee, we pay you every two weeks. Your disability benefits we pay you once a month. Well, but you lose a month that way. No, Your Honor, we will pay you – we cut the check on the first of the month instead of the first and the 15th. If somebody gets paid biweekly, they get 26 checks. If they get paid monthly, they get 24 checks. I found that out the first job I ever had. There's a big difference between getting paid on the first and 15th and getting paid every Friday. Well, just so that I'm clear, unless I've – I knew that information would come in handy. Your Honor, it is my understanding, in case I've messed this all up. When you're an active employee, you get paid on the first and the 15th. When you are on disability, you get one disability check on the first of each month. I see. Okay. But let me get back. I mean, if you had written the Department of Labor and said, here's the Xerox plan and here's what we did with Mr. Basari, they would have written you back and said, this falls within exemption. It's part of the – it's exempted from ERISA, right? In all likelihood, if the Department's position had been consistent. Yes, but do you know what? That doesn't mean Mr. Basari still couldn't sue us under Section 502 and under ERISA. No, I understand he may have an alternate remedy. But, I mean, as opposed to some – Go ahead. You're trying to interrupt me. Go ahead. Oh, I'm sorry. I don't mean to. No, no, no. You want to say something. Go ahead. But, see, all the Department of Opinions letter would do is say, we don't have to make certain filings with the Department of Labor. It would not take away a single right Mr. Basari had under ERISA. And the other thing that's important about those letters is they expressly adopt the – they expressly state that they are not binding. They use ERISA procedure 76.1, and Item 10 of that procedure says that these opinions are not binding on and cannot be relied upon by any third party. And in Meade, the Supreme Court said that's an extremely important factor. Sure. No, I understand it's not – this isn't a bind, at least in my view. It's not binding on us, but we do owe some deference, I think, under our and other cases. We've been around with this in the Supreme Court, and they've urged us to take a more careful deferential approach to agency decisions. Your Honor, I respectfully disagree with you for two reasons. Ours said that you should give some deference if the regulation it's interpreting is ambiguous. I don't think normal compensation is ambiguous. Well, you'd think not, but then all these opinion letters basically say it depends on the source of the plan. No, Your Honor. With respect, it doesn't. They don't come out and say here's what normal compensation means. They change and say that the regulation we're going to say that it means as long as you don't pay more than normal compensation. And that's exactly what Christiansen's Supreme Court said. No, we're not going to let you back door change the regulation. And I don't see how anybody could say that those opinion letters have not changed that regulation. The other thing is, Your Honor, you only have to follow it to the extent it has the power to persuade you. I can't understand what is in those opinion letters. What analysis, what logic, what thought process is set out in those opinion letters that says, wow, I'm persuaded now that normal compensation and that regulation really means as long as it's not more than normal compensation. And that's exactly what the district court said is, I don't think the term normal compensation in here is ambiguous. And I certainly don't see how these opinion letters in any way persuade me. And the other thing, Your Honor, when you talk about what the Supreme Court has said, as we note in our brief, and I think it's significant, in Nord versus Black and Decker, which came out of this court, it's a plan identical to ours from what I can tell. It paid 60 percent. And there, you, the Ninth Circuit, decided that case on the basis of ERISA. And so did, too, did the Supreme Court. Neither one of you said, whoops, we don't even have jurisdiction over this case because it's a payroll practice. It's not an ERISA plan. In all fairness, so that issue wasn't in the case. Well, Your Honor, it wasn't. It wasn't because every court's first responsibility is to make certain that it has subject matter jurisdiction. Sure. But also, if the issue of subject matter jurisdiction in that context isn't raised before the court, it's easy to pass over that. It's hard to say we've ruled on that when it's not discussed in the opinion or raised by the parties. I understand that, Your Honor. We can draw some significance from it, as you've said. We can draw some significance, but I don't think it's a binding. It constitutes binding precedent. It is not binding precedent, Your Honor. But I think the most important point about that fact is that Judge Stevens, who wrote the Marash decision and talks all about what is a payroll practice, or not a payroll practice, there it was vacation pay, but what falls within this regulation and what doesn't was on the Nord decision. And you would have thought that the guy who wrote the decision in Marash would have said, wait a minute, are we even talking here about an ERISA plan? Well, it seems to me that the letters of the Labor Department aren't binding on us, and the cases that have treated a similar plan as ERISA are not binding. We're pretty much in a position to decide for the first time, is it or isn't it? And I'd like to ask you the same question Judge Brageson asked Ms. Brewer, what difference does it make to Xerox? Okay, it makes a great deal of difference, Your Honor, because and that's one of the points I was going to talk about the policy reasons. Congress knew in 1974 that it didn't want to make employers provide medical disability and pension benefits. It decided instead to try to induce them. And it gave certain inducements and said, all right, we're going to let you have these plans and we're going to have one uniform federal law, so you don't have to worry about your plan being interpreted one way by an Alabama court and a different way by a Wyoming court, and we're not going to do a whole bunch of other different things. It preempted state law in 514. We've complied with that. We've incurred substantial expense in complying with ERISA, and it is important to us that we know how this plan is going to be enforced across the country, that there's a uniform law. Now, what this law does, what if Mr. Passiri's opinion is followed, that means that we no longer apply with ERISA at all, and now we find ourselves in 50 different state courts and jury trials, extra contractual damages, and so it probably makes us rethink whether we want to do a disability plan at all. And the thing about it also, Your Honor, is we've noted in our case, even though it hasn't been addressed expressly, every district court and every federal court to address this LTD plan has held it was an ERISA plan. So we have gone through the considerable expense and effort to make certain that we comply with ERISA, most particularly the Section 503 full and fair review provisions, and now we're going to find, well, you guys were silly to do that. You don't have to incur any of these expenses. You should have just thrown it all out. I don't think that's good for our employees, and I don't think it's good for Xerox, and I don't think it's what Congress intended. I would then, if I may, talk for a moment about the policy reasons, because I think what we've done here is we're about to throw the baby out with the bathwater if we follow what Mr. Baseri says. What Congress did in ERISA, it says we want these plans to have one uniform written plan, and we want the participants to have a discernible way to get those plans, and that's what Part 1 of ERISA does. That's what Section 104 and 503C do. It said, too, that we want to make certain that there is a uniform federal law, and that's why they preempted in Section 514 all of the state laws. It said that it adopted Section 510 because it wanted to make certain that if employers fired people simply for filing benefit claims, those people had a federal cause of action in that event. It wanted to make sure that there was a uniform, full, and fair review, and there are extensive regulations that we comply with under Section 503 to make certain that we give that full and fair review, and indeed in this instance Mr. Baseri took full advantage of those. And now, simply because Mr. Baseri has decided that maybe he would be better off without all of that, he wants to throw that out for all of the other thousands of participants in LTD plans. Again, the problem, though, with your argument is that it's not just Mr. Baseri. It's all these people who have written the Department of Labor over the course of time. I know they're slightly different circumstances, but, you know. Okay, Your Honor. I mean, basically, Departments, I appreciate your statutory, your regulatory argument, and I think the toughest argument for Mr. Baseri is to say that normal does not equate to not more than normal. I mean, that's your basic argument is that the Department's position is illogical and adding worse the regulation. All I'm saying is they've taken this position before, and so this isn't going to have a cataclysmic effect one way or the other, right? It will, Your Honor. Those opinion letters were never solicited by a single participant such as Mr. Baseri. They were all solicited by an employer who said we don't want to comply with ERISA. We don't think we need to. And all the Department of Labor has said is, all right, you don't have to file your SPDs with us. You don't have to file 5500s. None of those never did they say, and by the way, that means that people like Mr. Baseri can't sue you under ERISA. In fact, they went out of their way to say we're not saying that. And so if they had wanted to go the next step where Mr. Baseri wants to take you, they would have said this has binding effect and we're telling you from now on nobody can sue you under ERISA. But in that Sun Olin case, if somebody of their participants had sued him the next day, that opinion letter would have meant absolutely nothing. And I think that's the significant factor. Mr. Baseri a month ago sent to you a bunch of other decisions which he thought was supportive of his position. But I think the important thing in those, those were all FLSA cases. In those opinion letters, the agency said this is binding precedent that can be relied upon. And in our case, the Department of Labor has gone to exactly the opposite extreme and said nobody can rely upon these opinions. And so I don't think that you can take that and say, well, that's an intent by the Department of Labor to modify and change its regulation, which I don't think is ambiguous. Now, I guess I think we're crossing. I don't disagree with your analysis at all in the sense that it's not binding precedent. However, it is the informed judgment of the agency in interpreting its own regulations. You claim it's unambiguous, and you have a good argument. They say it's ambiguous, and here's how we're interpreting it. And so it's to maybe do some deference. We don't have to defer or abdicate our role, and as Judge Noonan says, it's up for grabs for us to decide probably. But it does have some weight. Your Honor, you will never find in those opinion letters where the Department of Labor has said the regulation is ambiguous. Well, their view may be it's clear, and your interpretation is wrong. And that's when I think you have to go back to Christensen where Judge Thomas said you can't issue opinion letters. He's the justice. Justice Thomas. I think you'd want to make a point, too. Where Justice Thomas said you can't, by opinion letter, come back and change your regulation. And if you take normal compensation and switch it to not more than normal compensation and say, well, that's the deciding factor in this case, then you clearly have changed the regulation, and that's what you can't do. All right. Thank you. Thank you, Your Honors. Thank you. Now I have something to say. Actually, I do want to respond to a few points that Mr. Potler made. First of all, he's forgetting how Mr. Basiri lost his disability pay to begin with. The reason he lost his pay and he was still disabled, still medically unable to work, but while he was on disability receiving these payments, he was terminated. Xerox cut his employment, and then he got a letter. The letter was issued the very next day stating that he is no longer going to receive any disability payments because he's been terminated, even though he's still disabled, still unable to work. So that is not a disability plan. It's not a disability policy. It does not cover what a disability plan is supposed to cover. It's basically just like salary. It ends when employment ends. What about this insurance policy? Well, this insurance policy is a prudential insurance policy that will kick in for a person who's been disabled for more than 29 months. It has nothing to do with the part of the plan that we're talking about right now. It is an ERISA plan. It's funded through insurance. There's another important point here. The first five months of the disability is the same exact program that Mr. Vasiri was on, only it pays 100% for the first five months and 60% after five months. That's before the prudential insurance kicks in. So the administrative scheme is the same. The medical eligibility requirements are the same. The paychecks come the same way, but the paychecks are less after five months. Now, how that translates from wage compensation, which Xerox agrees that the first part of the program is wage compensation, not benefit compensation, not regulated by ERISA, as soon as they start paying less than full salary, it transfers from wage compensation to benefit compensation. That doesn't make any sense. So I think that position is much less reasonable than the Department of Labor's position that these funds are akin to wages, not benefits. And the Department of Labor has authority to keep in mind that Congress does not want federal law to preempt state regulations that have to do with wage compensation. So that's a very important, equally important congressional policy, is that wage compensation is not preempted by federal law. And the Department of Labor did not add anything to this regulation. It's Xerox who's adding a word to it. The regulation calls for normal compensation, which is not an immutable, precise term. Why isn't it? I mean, Mr. Trevisan thought it was normal. And what your argument seems to be, and the Department of Labor has adopted it, so it's not certainly an argument, is that normal compensation can mean less than normal compensation. Well, in the section before B-2, the one that's at issue here, the Department does use the word normal rate of compensation. In our section, he doesn't use the word rate. He just says normal compensation. So your argument would be it's a method of compensation, not the rate that's important? That's correct. And there's some ambiguity there as to what the department actually means by omitting the word rate in that case. That the department has said that if a plan pays more than the regular rate, for example, if it adds a cost of living adjustment, then it's not a payroll practice. But if it pays less than the regular rate, it is, as long as it meets the other requirements. So the focus is on the nature of the payments, the character of the payments, that they're much more like wage compensation than a benefit. How do you address the argument that you cannot divide a plan, that if you have some employees who are through the collective bargaining agreement who are similarly situated but paid from a trust and your clients paid from the general assets, that you can't have an ERISA and a non-ERISA plan? Actually, the cases say that you can't take a payroll practice and combine it with an ERISA plan and make it into an ERISA plan. So we definitely have some disagreement on what the case law is. I really also want to point out that the deference analysis is not this power to persuade test that Mr. Potler keeps referring to and that even Judge Tavizian mentioned. That the test for deference is because the Department of Labor is interpreting its own regulation, the test is going to be under our, our versus Bowles, which is still the law, and this Court has recognized it time and time again that there's a difference in how to approach the deference question. If the agency is interpreting its own regulation, then deference is analyzed under our, which means that if there's some ambiguity in the regulation, the court must look to the way that the department is interpreting it. And if the department's interpretation is permissible given the purposes of the regulation, then it is binding, then the court must defer to it. That's the, our rule, and it's been repeated in this court several times in recent years. Are there any other questions? No. All set. Thank you. Thank you.
judges: Pregerson, Noonan, Thomas